UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARILU CARD,<br>    Plaintiff<br><br>v.<br><br>THE BARBERINO BROTHERS,<br>INCORPORATED,<br>d/b/a<br>BARBERINO NISSAN<br>    Defendant | CIVIL ACTION NO.<br>3:17-CV-1650-MPS<br><br><br><br>TRIAL BY JURY DEMANDED<br><br><br><br>DECEMBER 12, 2017 |

## AMENDED COMPLAINT

**I.    INTRODUCTION**

1. This is a suit brought by a consumer regarding the purchase and sale of a motor vehicle. Plaintiff brings this action to recover actual damages, statutory damages, punitive damages and reasonable attorney's fees and costs from Defendant Barberino Brothers, Inc., d/b/a Barberino Nissan ("Barberino Nissan"). The Plaintiff claims that Barberino Nissan violated the federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* ("TILA"), Conn. Gen. Stat. § 52-565 for civil forgery, the Connecticut Retail Installment Sales Finance Act, Conn. Gen. Stat. § 36a-770 *et seq.* ("RISFA"), the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.* ("ECOA"), the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq.* ("CUTPA"), and Conn. Gen. Stat. § 17b-462  in the sale of the vehicle to Plaintiff.

1

## II.    PARTIES

2.  Plaintiff Marilu Card ("Plaintiff" or "Card") is a natural person residing in Meriden, Connecticut.

3.  Defendant Barberino Nissan is a Connecticut stock corporation that operates a car dealership in Wallingford, Connecticut.

## III.   JURISDICTION

4.  Jurisdiction in this court is proper pursuant to 15 U.S.C. § 1640(e), 15 U.S.C. § 1691e(f). Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

5.  This court has jurisdiction over Barberino Nissan because it is organized under the laws of the state of Connecticut and it regularly conducts business in this state.

6.  Venue in this court is proper because the Plaintiff resides in Connecticut and the claims involve a transaction that occurred in Connecticut.

## IV.    FACTUAL ALLEGATIONS

1.  The practice of car dealerships setting disadvantageous pricing and credit terms for racial minorities, women and the young and old has been extensively studied and persists within the industry even when dealerships undertake the conduct without explicit animus. *See Race and Gender Discrimination in Bargaining for a New Car;* Ian Ayres and Peter Siegelman, The American Economic Review, Vol. 85, No. 3. (Jun., 1995), pp. 304-321.

2. Research suggests that the dealerships' disparate treatment of women and racial minorities may be caused by dealers' statistical inferences about consumers' reservation prices.

3. Barberino Nissan engages in sales tactics wherein they target women, racial minorities, elderly persons and young people for discrimination with respect to the extension of credit and the setting of credit terms.

4. Barberino Nissan is defined as a "creditor" pursuant to the ECOA. See 12 C.F.R. § 1002.2(l); *Tyson v. Sterling Rental, Inc.*, 836 F.3d 571, 578 (6th Cir. 2016)

5. Barberino Nissan regularly participates in the credit decision through setting the terms of credit by, *inter alia,* setting the price of the vehicle, selecting which vehicle to sell, and selecting the price for add-ons associated with the transaction.

6. On information and belief, Barberino Nissan also sets the interest rate for some or all of the vehicles it sells.

7. It is Barberino Nissan's business practice to "size up" customers and, for those perceived as vulnerable and gullible (known internally at Barberino Nissan as "ducks", as in the colloquialism "sitting ducks"), to charge them higher prices (relative to sophisticated buyers) and to "pack" their contracts with extras of little value compared to their cost.

8. Barberino Nissan determines whether or not a customer is a "duck" on the basis of whether or not a customer is a member of a protected class, such as an elderly person, a woman or a member of a racial or ethnic minority.

9. Barberino Nissan refers to buyers who appear sophisticated and informed, including many middle-aged, white men, as "beaters" and it does not attempt to take advantage of them with the above described sales tactics.

10. Barberino Nissan refers to Indian-American customers as "dots", presumably in reference to the Bindi worn by some Hindu and Jain women. When Indian-American customers come to Barberino Nissan, the sales staff pretends to be busy and ignores them because of their perception that they are sophisticated customers and will not be able take advantage of them.

11. Barberino Nissan refers to Asian-American customers as "chinks", in reference to the slur used against Asian-Americans. Barberino Nissan's tactic with Asian-American customers is to increase the price of the vehicle, but then add digits associated with luck in Chinese numerology in order to entice the customer into the purchase.

12. When Barberino Nissan determines a customer to be a "duck", one frequently utilized tactic is to show that customer a single vehicle on their lot and tell them that this is only vehicle for which they are "approved" or that it is the only vehicle available for them purchase.

13. Barberino Nissan uses this tactic, because it allows them to off-load undesirable vehicles to "ducks", usually at prices far above their value.

14. Barberino Nissan will not permit that customer to apply for credit for any other vehicles on the lot.

15. Barberino Nissan also routinely removes the window stickers (known as Monroney stickers) from new cars being shown to "ducks" so that they are able to set

the vehicle's price, add-ons and financing terms without the customer having reference to what other individuals, who are not "ducks", would be charged for the same vehicle.

16. By removing any reference to the price on the vehicle, customers are also prevented from being able to compare the vehicle being offered for sale to them to price of other vehicles on the lot or ascertain the Manufacturer's Suggested Retail Price ("MSRP") for the vehicle.

17. It is the practice of Barberino Nissan to set the asking price for a vehicle based not upon the MSRP or advertised price when selling a vehicle to a person labeled as a "duck", but upon the maximum amount or nearly maximum amount for which a customer is approved by a lender.

18. Frequently, Barberino Nissan engages in credit application fraud so that customer's income is grossly overstated and the customer is approved for a much greater amount than they can actually afford.

19. On information and belief, Barberino Nissan increases the dealer mark-up on the interest rate offered by lenders to a greater amount for elderly customers than for younger customers.

20. On or about June 10, 2017, Plaintiff went to Barberino Nissan seeking a vehicle.

21. Plaintiff is an elderly woman as that term is defined by ECOA regulations and the Connecticut Elder Abuse statute.

22. Plaintiff met with a salesperson, JC, and told him that she could only afford a vehicle with monthly payments up to $550.

23. JC showed Plaintiff a 2017 Nissan Altima (the "Vehicle") and said that was the only vehicle in their inventory she was "approved" for.

24. Plaintiff had not submitted a credit application or any documents to Barberino Nissan at this point in the transaction, so the statement regarding "approval" was erroneous.

25. Barberino had determined that Plaintiff was a "duck" and decided to undertake the tactics aforedescribed.

26. Barberino had determined that Plaintiff was a "duck" on account of her age and sex.

27. JC would not permit Plaintiff to test drive the Vehicle.

28. Plaintiff agreed to purchase the Vehicle because she needed transportation for doctors' appointments and for transporting her grandchildren.

29. Plaintiff wanted to purchase a larger vehicle, but was told that she was only "approved" for the Vehicle and was discouraged from applying for credit for any other vehicle.

30. Vehicles that were larger and less expensive than the Vehicle were available for sale at the same Plaintiff was shown the Vehicle, but Plaintiff was not permitted to apply for credit for these other vehicles on account of her age and sex.

31. That Plaintiff was approved for credit for this Vehicle indicates that she would have been approved for other vehicles that were less expensive and better suited for her needs.

32. JC promised Plaintiff that the payments would not exceed $550 per month.

33. Plaintiff then met with an individual who identified himself as "Charles" and who was a finance manager.

34. Charles had Plaintiff sign various documents, including a purchase order, a GAP addendum and a service contract. Plaintiff did not sign a retail installment sales contract.

35. Charles added a GAP addendum, costing $600, and a service contract, costing $1,999, that were included in the contract despite neither being requested nor desired by Plaintiff, and she was not alerted to their presence.

36. Unbeknownst to Plaintiff, Charles or another Barberino employee prepared a retail installment sales contract (the "Contract") that provided for monthly payments of $699.

37. Plaintiff did not sign the Contract, and she was not provided with a copy.

38. Plaintiff and her husband traded-in her husband's car, which was their only vehicle, as part of the transaction.

39. The Vehicle's Monroney sticker listed the Vehicle's price as $26,835, however, the purchase order listed the sale price as $31,608.50.

40. Plaintiff was unsure when, precisely how much, and to where she was supposed to make payments and she contacted Nissan Motors Acceptance Corp. who she had been told was financing the transaction.

41. NMAC provided her with a copy of the Contract, and she discovered the forgery and she discovered that the payments were substantially greater than the maximum amount that she had been told she would pay.

42. The Contract contained a digital signature, and Plaintiff Card never signed an electronic pad during the course of the transaction.

43. Plaintiff receives fixed income of only $650 per month and can not afford the payments.

44. On information and belief, Barberino Nissan committed credit application fraud in connection with the transaction; because Plaintiff was informed by NMAC that it would have never accepted the Contract had it known that her income was less than the monthly payment.

45. A similarly-situated, younger male would not have been subject to the same disadvantageous credit terms as Plaintiff.

## V.   CAUSES OF ACTION

### Count One – Truth in Lending Act

46. Barberino Nissan violated TILA, because it failed to provide Plaintiff with any of the disclosures required by 15 U.S.C. § 1638.

47. For Barberino Nissan's TILA violations, it is liable to Plaintiff for actual damages, plus additional damages of $2,000, and attorney's fees and costs.

### Count Two – Civil Forgery

48. Barberino Nissan assigned the Contract to NMAC with Plaintiff's forged electronic signature.

49. Barberino Nissan has falsely made, altered, forged, or counterfeited the document and knowingly presented it as genuine to NMAC , and it is liable to Plaintiff for double his damages pursuant to Conn. Gen. Stat. § 52-565.

### Count Three – Connecticut Retail Installment Sales Finance Act

50. Barberino Nissan violated RISFA, Conn. Gen. Stat. § 36a-770 *et seq.* by not securing Plaintiff's signature on the Contract and by not providing her with a copy.

51. Barberino Nissan's violations of RISFA were willful within the meaning of Conn. Gen. Stat. § 36a-786.

52. The Vehicle has been returned to Barberino Nissan thereby restoring it as closely as possible to their pre-contractual position.

53. Plaintiff is entitled to an order stating that the contract has been validly rescinded.

### Count Four – Connecticut Unfair Trade Practices Act

54. Barberino Nissan's actions as alleged above also violated CUTPA.

55. Barberino Nissan's refusal and failure to sell the Vehicle for the agreed upon price is a per se violation of CUTPA pursuant to Conn. Agency Reg. § 42-110b-28(b)(1).

56. Barberino Nissan sent a fraudulent credit application to NMAC with inflated income amounts.

57. In violation of Conn. Gen. Stat. § 14-62(b)(2), Barberino Nissan inserted unwanted extra changes in the form of a GAP addendum and service contract into the purchase order when Plaintiff neither knew they were inserted nor requested them.

58. Pursuant to Conn. Agency Reg. § 42-110b-28(b)(23), the violation of any state or federal law or regulation regarding the sale of a motor vehicle is a *per se* CUTPA violation.

59. Barberino Nissan acted unfairly and deceptively in violation of CUTPA.

60. As a result of Barberino Nissan's conduct, Plaintiff suffered an ascertainable loss in that she has entered into a financing arrangement she cannot afford and has lost use of her husband's Vehicle. Moreover, as a result of the debt owing on the Contract, she is unable to finance another vehicle.

61. Plaintiff is entitled to actual damages, punitive damages, attorney's fees.

### Count Five – Equal Credit Opportunity Act

62. Plaintiff is a member of two protected classes: elderly as defined by 12 C.F.R. § 1002.2(o) and a woman.

63. On account of her age and sex, Barberino Nissan steered Plaintiff towards a single vehicle on its lot and told her that it was the only vehicle for which she was "approved".

64. Barberino Nissan violated ECOA by discouraging her from applying for credit on less expensive vehicles and by financing the transaction on terms that would have been offered to someone not in her class.

65. Barberino Nissan set forth disadvantageous credit terms by grossly increasing the purchase price of the Vehicle over the MSRP. It would not have set similarly disadvantageous credit terms had Plaintiff been a younger and a man.

66. Barberino Nissan is liable to Plaintiff for actual damages, punitive damages up to $10,000, fees and costs.

**Count Six – Violation of Conn. Gen. Stat. § 17b-462**

67. Plaintiff is over 60 years of age and defined as "elderly" pursuant to Conn. Gen. Stat. § 17b-450.

68. Barberino Nissan exploited Plaintiff as that term is defined by Gen. Stat. § 17b-450 by taking advantage of Plaintiff for monetary gain in violation of Conn. Gen. Stat. § 17b-462(a) by way of the aforedescribed conduct.

69. Barberino Nissan is liable to Plaintiff for damages and a reasonable attorney's fee.

Wherefore, Plaintiff claims actual damages, double damages, TILA statutory damages of $2,000, punitive damages, attorney's fees and costs, and an order that the Contract is validly rescinded and that no debt is owed thereunder.


PLAINTIFF, MARILU CARD


By: /s/ *Brendan L. Mahoney*
    Daniel S. Blinn (ct02188)
    dblinn@consumerlawgroup.com
    Brendan L. Mahoney (ct29839)
    Bmahoney@consumerlawgroup.com
    Consumer Law Group, LLC
    35 Cold Spring Rd. Suite 512
    Rocky Hill, CT  06067
    Tel. (860) 571-0408
    Fax. (860) 571-7457

## CERTIFICATE OF SERVICE

     I hereby certify that on this 12th day of December, 2017, a copy of the foregoing Appearance was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                                /s/Brendan L. Mahoney
                                                Brendan L. Mahoney